UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-114-KSF

APPALACHIAN REGIONAL HEALTHCARE, et al.                                    PLAINTIFFS

vs.                              **OPINION AND ORDER**

COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, et al.                                                   DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' motion for the Kentucky Cabinet for Health and Family Services (" Cabinet") to show cause why it should not be held in contempt for refusing to process requests by patients to transfer away from Coventry Health and Life Insurance Company ("Coventry"), a managed care organization ("MCO"), in light of Coventry's impending termination of its provider contract with Appalachian Regional Healthcare, Inc. ("ARH"). The background facts in this case were detailed in the Court's June 20, 2012 Opinion [DE 67] and will only be repeated here as they relate to the show cause motion. Having heard the testimony and arguments of the parties, ARH's motion will be granted in part as discussed below.

ARH is a non-profit healthcare provider that operates eight hospitals in eastern Kentucky, along with home health services, durable medical equipment stores, physician office clinics, and retail pharmacies. ARH and its physicians have been caring for the eastern Kentucky population for more than fifty years. DE 67 ¶ 8. In October 2011, Coventry entered into a Letter of Agreement ("LOA") with ARH whereby ARH would be one of Coventry's network providers for Medicaid services.

Coventry wrote ARH on March 29, 2012, advising that this LOA would be terminated effective May 4, 2012. DE 8, Ex. F. ARH moved for expedited injunctive relief. DE 8. At the

hearing before this Court on May 4, 2012, the Cabinet said it had "received about a thousand requests to move from Coventry to a different MCO recently and those are in the process now." DE 77, pp. 10-11. The Court emphasized that it wanted to be assured the state would act expeditiously on any change requests. *Id.* at 46. A May 4, 2012 Agreed Order entered by the Court said: "The Cabinet shall deem any termination of the Coventry-ARH LOA to be a 'for cause'[1] basis to transfer members to another managed care organization in an expedited manner and in accordance with the member's choice." DE 28 ¶ 5. Subsequently, Coventry agreed to extend the ARH termination date to June 30.

At a May 31, 2012 hearing, the Cabinet referenced Coventry's need to give notice to all their members in Medicaid Regions 7 and 8 of the termination of ARH as a provider and of the opportunity to change to another MCO. The Cabinet then said: "We are prepared to take any of those people who call and put them either with WellCare if they ask for it or Kentucky Spirit if they ask for it." DE 70, p. 32.[2] This Court's June 20, 2012 Opinion found in part:

> Coventry's abrupt termination of its contract with ARH, without providing adequate notice and opportunity for a large portion of its members to remain ARH patients by transferring to another MCO, has created a serious crisis in the Medicaid community in Eastern Kentucky: The Cabinet has assured the Court on several occasions that it can process a large volume of Medicaid Patients' requests to transfer to WellCare very quickly. The Court finds that the impending termination of Coventry's contract with ARH is "cause" for a change in MCO's.

DE 67, ¶¶ 75-77. Injunctive relief was granted to extend the terms of the LOA to November 1, 2012 to avoid irreparable harm to ARH and to allow time for patients to become better informed about the choices available. Coventry was also ordered to provide ARH by August 1, 2012 a list

---

[1] Outside an open enrollment period, a request by a Medicaid recipient to change an MCO must be "for cause."

[2] Kentucky Spirit is an MCO that has never had a contract with ARH. When Coventry's contract ends, the only MCO contracting with ARH will be WellCare.

of Coventry members who have used ARH services during the past five years so ARH could contact these patients and assist in the education process. DE 67, pp. 22-23.

ARH exerted tremendous effort to communicate with the public about the confusion surrounding this complex matter and to answer questions. It manned booths in Wal-Mart and other retail stores to reach the general population as widely as possible. For those interested in changing MCO's and retaining ARH as their healthcare provider, ARH provided largely preprinted forms addressed to the Cabinet and requesting a change of MCO. These forms, prepared and completed between April and July 2012, reflected the moving target termination dates and other rapidly-changing facts. For identification purposes, most of the forms contained the Medicaid beneficiary's name and Coventry Enrollment ID No. By the July 12 hearing, nearly 8,500 transfer requests had been completed and sent to the Cabinet.

Unfortunately, the Cabinet did not have access to Coventry's ID numbers and experienced difficulty matching names with Medicaid case files. Some forms had no signature. Other forms had the signature of a person who was not the legal guardian of the beneficiary. In all, about 20 percent of the forms had irregularities. The Cabinet began sending letters denying transfers based on inadequate information, but stopped in mid-May. After June 20, the Cabinet legal staff concluded that the extension of the contract period meant there was not yet a termination of the contract and, therefore, no "cause" to support a transfer request. Accordingly, the Cabinet ceased all efforts to process the form requests. Approximately 6,000 transfer requests are still being held.

An additional important fact relating to the processing of transfer requests was the Cabinet's decision to offer an Open Enrollment Period to all Kentucky Medicaid beneficiaries between August 20 and October 19, 2012. Ms. Keith, the Cabinet's Director of Member Services, Department for Medicaid Services, testified there have been several changes in the MCO's since the initial open enrollment, including changes of providers and changes in benefits. The Cabinet wants to give all beneficiaries accurate, updated information in a comparison format to assist them in choosing

MCO's and providers. A letter will be sent early next week to all members calling their attention to the new Open Enrollment Period and encouraging them to watch for more information. This letter will also assist the Cabinet in identifying and resolving issues regarding incorrect addresses. A packet with information on all MCO's and how to request a change is scheduled to be mailed out to all Kentucky members August 6, in advance of the August 20 beginning of Open Enrollment.

Ms. Keith testified at length about the Department's experience with the previous open enrollment, the training and staffing of their phone bank personnel, the extra hours and Saturday availability, the access to case files to confirm identity and authority of the caller as well as validation of all members in the household, the access to current provider information, and other advantages of the established system to handle MCO changes.

Jerry Haynes, President and CEO of ARH, testified that the initial Open Enrollment Period was disastrous with thousands of callers who could not get through to the Cabinet during the first few days. He further noted that many of their patients asked ARH for help and needed guidance regarding the choice of an MCO. Many called the Cabinet from one of ARH's hospitals or clinics. Mr. Haynes was also concerned about the confusion resulting from a member having already made a written request and not recognizing that they needed to make a second request. He also testified that many patients were aware of the pending termination and called ARH personnel frequently expressing their concern and confusion.

Although the initial Open Enrollment experienced some problems, especially the first few days, the Cabinet appears well prepared to resolve these issues during the second Open Enrollment. If that turns out to be incorrect, the Court is confident that one or more of the parties will make sure the Court is aware of it. The Court is also concerned that there has been so much confusion regarding this contract termination that any further letters or activity at this point may only make matters worse. Accordingly, the Court will not require the Cabinet to process the form

requests at this time, but does order the Cabinet to retain them in case they may need to be revisited in the next few months.

The Cabinet recognized that people pay little attention to open enrollment material. Ms. Heavrin said at the May 31 hearing before this Court: "I am sure it happens to you and to all of us in open enrollment periods for our health plans; we only read part of what we get anyway, and we don't always react quickly. Many people miss their deadlines for re-enrolling and they end up in the same plan when they thought they wanted to change." DE 70, p. 8. This issue may arise after the end of the open enrollment period and require further action.

The Court concludes that ARH established by clear and convincing evidence that the Cabinet violated Court orders to process thousands of requests by ARH patients to transfer from Coventry to WellCare of Kentucky, Inc. ("WellCare") for "cause" in an expeditious manner. *See Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Service Co.,* 340 F.3d 373, 379 (6th Cir. 2003). The Cabinet told the Court that requests to move from Coventry "are in the process now." The Court asked for assurance that the state would act expeditiously on any change requests. The May 4 Agreed Order said any termination of the LOA was a "'for cause' basis to transfer members to another managed care organization in an expedited manner and in accordance with the member's choice." The Cabinet reiterated at the May 31 hearing that it was prepared "to take any of those people who call and put them either with WellCare if they ask for it or Kentucky Spirit if they ask for it." Finally, the Court held that "the impending termination of Coventry's contract with ARH is 'cause' for a change in MCO's."

The Cabinet argued that it "never stated that it agreed that an impending termination, that may or may not occur, would trigger a 'for cause' interpretation." DE 99, p. 1. It further argued that the "extension of the LOA through the end of the open enrollment period as demanded by ARH negates the immediacy and 'for cause' nature of any request to change MCO." *Id.* at 3. Whether the Cabinet "agreed" with the Court's injunction holding that "the impending termination" constituted

5

"cause" is not relevant. Until the Court's Opinion is stayed or overturned on appeal, the Cabinet is bound to comply with it and with the May 4 Agreed Order that for cause transfers would be handled in an expedited manner and in accordance with the member's choice. To be excused from compliance, the Cabinet "must show categorically and in detail why [it] is unable to comply with the court's order." *Electrical Workers*, 340 F.3d at 379 (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). No such showing was made. The Court must also consider whether the Cabinet "took all reasonable steps within [its] power to comply with the court's order." *Id.* (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)). Based upon the testimony in this Court, the Cabinet took practically no steps to comply with the Court's order. Accordingly, ARH's motion to hold the Cabinet in contempt will be granted. A decision regarding any sanctions will be made at a later date.

**IT IS ORDERED** that:

A. ARH's motion to hold the Cabinet in contempt for not processing MCO transfer requests [DE 82] is **GRANTED IN PART**, but the Cabinet will not be required to complete the processing at this time;

B. The Cabinet is ordered to proceed promptly with the Open Enrollment Period as described during the July 12, 2012 hearing;

C. The Cabinet is ordered to retain any form requests to transfer MCO's through the end of the year in the event they may need to be processed at a later date;

D. The Court will make a decision regarding any possible sanctions against the Cabinet at a later date.

This July 16, 2012.



Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**

6