UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-114-KSF

APPALACHIAN REGIONAL HEALTHCARE, et al.                                      PLAINTIFF

vs.                              **OPINION AND ORDER**

COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, et al.                                                   DEFENDANTS

* * * * * * * *

This matter is before the Court on the motion of Plaintiffs Appalachian Regional Healthcare, Inc. and ARH Mary Breckinridge Health Services, Inc., collectively "ARH," for partial summary judgment on reimbursement for out-of-network services. For the reasons discussed below, ARH's motion will be granted.

**I.     BACKGROUND**[1]

On November 1, 2011, Kentucky implemented a managed care program for most of the state's Medicaid recipients. The Cabinet for Health and Family Services ("Cabinet") awarded contracts to three managed care organizations, one of which was Coventry Health and Life Ins. Co. ("Coventry"). Coventry entered into a Letter of Agreement ("LOA") with ARH to provide services to Coventry members, and the parties were to negotiate toward a full participation agreement. If no participation agreement was agreed upon, the LOA was to continue until June 30, 2012 and for as long thereafter as mutually agreed by the parties. The LOA rates Coventry agreed to pay ARH providers equaled or exceeded the Kentucky Medicaid Fee Schedule ("Medicaid rate"). [DE 24-5].

On March 28, 2012, Coventry notified ARH that it was terminating the LOA effective May 4, 2012 and that any future agreement would require lower reimbursement rates. A few weeks

---

[1] The background in this case is described more fully in this Court's June 20, 2012 Opinion [DE 67] and will not be repeated here.

later, Coventry notified ARH that it would not authorize treatment or services at ARH facilities except as required by law. Subsequently, Coventry proposed to pay ARH the out-of-network ("OON") rate agreed upon between Coventry and the Cabinet, which is 90 percent of the Medicaid rate. DE 54-2 at 2. ARH claims that payments at this rate would cover only about 67 percent of its costs. DE 54 at 7.

Following an evidentiary hearing, the Court granted in part ARH's motion for a preliminary injunction and required Coventry to maintain the status quo under its LOA with ARH until November 1, 2012. The Court found that the "health and well being of thousands of these [Region 8] patients hang in the balance, and many have already suffered hardships, stress and confusion as a result of Coventry's sudden notice of termination of its contract with ARH." The Court could "not allow patients to be cut off from their life-long physicians and hospitals without an adequate opportunity to become informed regarding the impact of the termination of ARH's contract and the choices for the patients to make as a result." DE 67 at 20. An appeal of the preliminary injunction is currently pending in the Sixth Circuit Court of Appeals.

ARH moves for partial summary judgment against Coventry for a declaration of rights regarding the rates ARH should be paid as an out-of-network provider when it provides non-emergency services to Coventry members. ARH argues that it cannot be bound by the "90 percent of the Medicaid fee schedule/rate" provision in the agreement between the Cabinet and Coventry because ARH is not a party to that agreement. The Cabinet also admits that "ARH is neither a party nor a third-party beneficiary to the contract between Coventry and Cabinet." DE 57-1 at 1. At the outset of briefing this motion, ARH was also seeking a declaration that Coventry was required to comply with the "Continuation of Benefits Clause" in the LOA and to pay 100 percent of the Medicaid rate to ARH for emergency services provided to Coventry members. DE 53 at 1-2. In its response, Coventry agreed to comply with those provisions. DE 78 at 3, n. 1. Accordingly, judgment will be granted on those two rate issues. The only remaining rate question is what is the

2

standard for the rate Coventry should pay ARH for non-emergency services provided to Coventry members.

Coventry's response focuses on the barriers to a challenge of Medicaid rates by private action. DE 53. The Cabinet also argues against summary judgment "[t]o the extent that Plaintiffs' Motion asks for a determination related to adequacy of the Cabinet's Medicaid rates or to any claim that the Cabinet is liable for any alleged non-payment by Defendant Coventry." DE 75 at 1. Plaintiffs are abundantly clear in their replies that the Cabinet's Medicaid rates are not the subject of the present motion, nor are they seeking damages against the Cabinet. DE 105 at 1; DE 107 at 1. To the contrary, ARH has administrative appeals of its Medicaid rates pending in state court and is pursuing those appeals. DE 107 at 7. Just as the LOA did not change the state's Medicaid rates, neither will a ruling on what Coventry must pay ARH for out-of-network, non-emergency services have any effect on the state's Medicaid rates. *Id.* at 4. The question here is whether ARH is bound by the contract between the Cabinet and Coventry and, if not, what must Coventry pay ARH as an out-of-network provider. This Court has diversity jurisdiction over the state law questions raised by ARH.[2] The alleged barriers claimed by Coventry and the Cabinet are not relevant to the question of law presented by ARH's motion.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In the present case, ARH raises only questions of law.

---

[2] ARH filed a similar action against Kentucky Spirit in Franklin Circuit Court because there was no diversity jurisdiction. Kentucky Spirit and the Cabinet removed the case, but it was remanded for not raising a substantial federal question. *Appalachian Regional Healthcare, Inc. v. Kentucky Spirit Health Plan, Inc.* No. 3:12-026-DCR, 2013 WL 191371 at *7-8 (E.D. Ky. Jan. 17, 2013).

It acknowledges that a fact question may arise as a result of the Court's ruling, but there are no disputed facts relating to the motion for partial summary judgment.

### B. ARH Is Not Bound By The Contract Between Coventry and the Cabinet.

The Medicaid Managed Care Contract ("MCO Agreement") that Coventry entered into with the Cabinet contains Section 29.2 titled "Payment to Out-of-Network Providers," which provides:

> Covered Services shall be reimbursed at 100 percent of the Medicaid fee schedule/rate until January 1, 2012 and after January 1, 2012 at 90% of the Medicaid Fee Schedule/rate.

DE 54, Ex. B at 120. The original plan for this contractual provision ;may have been to encourage providers to agree to contracts with the MCOs; however, the current effect appears to be encouraging Coventry, and possibly other MCOs, to terminate their contracts with providers and thereby pay less for services. Plaintiffs note that Coventry has issued a "spate of other contract termination notices" to hospitals and physicians around the state. DE 54 at 7, n. 11. This Court previously found Coventry's network to be "inadequate." DE 67 at 19. ARH contends that the Cabinet has shown little interest in enforcing the requirements for network adequacy.

ARH's position is a simple one. It cannot be bound by a contract to which it was not a party. DE 54 at 12. In this diversity case, Kentucky substantive law applies. *Martin v. Cincinnati Gas and Elec. Co.,* 561 F.3d 439, 442 (6th Cir. 2009). The interpretation of a contract is a question of law for the court to decide. *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). One who is not a party to a contract, is not bound by its terms. *See Hardin County Kentucky Telephone Co. v. City of Elizabeth town*, 227 Ky. 778, 14 S.W.2d 162, 164 (1929) (However, plaintiff was not a party to that contract, and, of course, is not bound by its obligations and stipulations."); *DCIPA, LLC v. Lucile Slater Packard Children's Hospital at Stanford*, 868 F. Supp.2d 1042, 1051 (D. Or. 2011) (MCO's contract with Oregon state agency was not binding on non-participating provider).

4

ARH's position is correct. It is not bound by the reimbursement rate for out-of-network services set forth in Section 29.2 of the Medicaid Managed Care Contract between Coventry and the Cabinet.

### C. ARH Should Be Paid the Reasonable Value of Non-Emergency Out-Of-Network Services Provided to Coventry Members.

ARH notes that for many of its members in Region 8, Coventry will not be able to provide necessary medical services that satisfy the geographic accessibility requirements of 907 KAR 17:015E.[3] In those instances, Coventry will have no choice except to authorize those services on an out-of-network basis. ARH's question is what is the standard for the rate at which ARH should be reimbursed by Coventry when services are provided on an out-of-network basis. It contends it is entitled to be reimbursed for the reasonable value of its services under the equitable doctrine of *quantum meruit*.

"*Quantum meruit* is an equitable remedy invoked to compensate for an unjust act, whether it is harm done to a person after services are rendered, or a benefit is conferred without proper reimbursement. It, therefore, entitles the one who was harmed to be reimbursed the reasonable market value of the services or benefit conferred." *Lofton v. Fairmont Specialty Ins. Managers, Inc.*, 367 S.W.3d 593, 597 (Ky. 2012). "Recovery under the theory of quantum meruit can be had regardless of the absence of an enforceable contract." *Quadrille Business System v. Kentucky Cattlemen's Association, Inc.*, 242 S.W.3d 359, 365 (Ky. Ct. Ap. 2007). It is a contract implied by law to allow for recovery for another's unjust enrichment. *Id.* A party seeking recovery on a *quantum meruit* claim must establish: "(1) that valuable services were rendered, or materials furnished; (2) to the person from whom recovery is sought; (3) which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and

---

[3] The prior regulation, 907 KAR 17:005, was recently replaced by 907 KAR 17:015E.

5

consent of that person; and (4) under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person." *Id.* at 366.

If ARH provides health services to a Coventry member on an out-of-network basis, it is entitled to recover from Coventry the reasonable value of those services. The services provided unquestionably have value to the member/patient. Federal and state law prohibit a provider from charging a Medicaid enrollee for services covered by an MCO plan. *See* 907 KAR 17:005; 42 C.F.R. § 438.106(c). ARH has only Coventry to look to for reimbursement for healthcare services provided to Coventry members. Coventry is paid by the state to make healthcare services available to its members. Accordingly, Coventry should be required to pay providers who fulfill that obligation. The services would be received by the members. Coventry also should know that healthcare services are not free and that providers expect to be paid. If ARH is not reimbursed for the reasonable value of the services it provides, Coventry or any other MCO receiving out-of-network services would be unjustly enriched. Thus, all prongs of the *quantum meruit* analysis are satisfied.

Two other courts have held that out-of-network hospitals are entitled to recovery under a *quantum meruit* or unjust enrichment analysis. In *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* 173 S.W.3d 43 (Tenn. Ct. App. 2003), River Park Hospital became dissatisfied with the rate of reimbursement paid by the MCO and terminated its contract. *Id.* at 49. A Tennessee regulation stated that payment to an out-of-network provider "cannot be less than the amount that would have been paid to a provider under contract with the managed care organization for the same service." *Id.* at 55. The court held that the rate in the regulation was only a floor and not a ceiling. *Id.* at 56. Because there was no express or implied agreement between River Park and the MCO on the rate of reimbursement, the court found a contract implied in law and held that River Park was entitled to a "reasonable rate" of reimbursement for the services provided. *Id.* at 60.

Similarly, in *Temple University Hospital, Inc. v. Healthcare Management Alternatives, Inc.*, 832 A.2d 501 (Pa. Super. 2003), a hospital terminated its contract with Healthcare, an MCO, because of inadequate reimbursement. The court held the hospital could recover from Healthcare for services "under a quasi-contract theory" or contract implied in law. *Id.* at 507. The court rejected the hospital's claim that it could recover its published rates, which substantially exceeded its costs. *Id.* at 508. Nonetheless, the hospital could recover "the reasonable value of its services" to avoid unjust enrichment. *Id.* at 509.

This Court finds this analysis persuasive and holds that ARH is entitled to be reimbursed by Coventry for the "reasonable value of its services" rendered to Coventry members on an out-of-network basis. Before the reasonable value can be determined, the Court anticipates that an evidentiary hearing will be necessary and that additional discovery may be needed. In the interest of judicial economy, the Court will postpone scheduling these matters until after the Sixth Circuit Court of Appeals renders its decision on the preliminary injunction.

### III.   CONCLUSION

**IT IS ORDERED** that ARH's motion for partial summary judgment [DE 53] is **GRANTED** and its rights to reimbursement from Coventry are declared as follows:

A.   ARH is not bound by the reimbursement rate for out-of-network services set forth in Section 29.2 of the Medicaid Managed Care Contract between Coventry and the Cabinet;

B.   Coventry shall continue to comply with the LOA's Continuation of Benefits Clause and pay ARH the rate set forth in the LOA for services encompassed by Section 14 of the LOA;

C.   Coventry shall pay ARH 100 percent of the Medicaid rate for emergency services provided by ARH to Coventry members; and

D.      Coventry will pay ARH the "reasonable value" of non-emergency services provided by ARH to Coventry members, which rate will be determined at a later court proceeding unless an agreement is reached earlier by the parties.

This March 28, 2013.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge