UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-114-KSF

APPALACHIAN REGIONAL HEALTHCARE, et al.                    PLAINTIFF

vs.                           **OPINION AND ORDER**

COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, et al.                                 DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of King's Daughters,[1] a group of healthcare providers in Northeastern Kentucky, to intervene in the present action and to file its Proposed Intervening Complaint alleging many of the same claims against Coventry Health and Life Ins. Co., ("Coventry"), the Commonwealth of Kentucky Cabinet for Health and Family Services, and Audrey Haynes (collectively the "Cabinet") as were raised by ARH in this lawsuit.  For the reasons discussed below, the motion will be granted.

**I.    BACKGROUND**

The background in this case is described more fully in the Court's June 20, 2012 Opinion [DE 67] and is not repeated here in the interest of judicial economy.  Effective November 1, 2011, Coventry, a managed-care organization, entered into a Letter of Agreement ("LOA") with King's Daughters that was to remain in place until the parties reached agreement on a long-term Provider Agreement.  DE 119-3 at ¶¶ 35-36.  On April 25, 2012, Coventry gave King's Daughters a notice that it was terminating the LOA effective May 26, 2012; however, it withdrew that notice by letter dated May 9, 2012.  DE 119-3 at ¶ 88.  Subsequently, Coventry has taken the position that the LOA reimbursement rates were reduced effective July 1, 2012 and that the LOA terminated October 31,

---

[1] "King's Daughters" is comprised of Ashland Hospital Corporation d/b/a/ King's Daughters Medical Center; Ashland Area Health Alliance, Inc.; King's Daughters Medical Specialties, Inc.; and Kentucky Heart Institute, Inc.

2012. *Id.* at ¶ 90. In a September 24, 2012 letter to its Members, Coventry told them they could only go to King's Daughters as an out-of-network provider for an emergency, family planning services, or with Coventry's prior approval. *Id.* at ¶ 98. Coventry, however, has refused to pre-authorize care at King's Daughters for Coventry Members needing medical services. *Id.* at ¶¶ 101-102. Coventry told its Members they could receive care at Our Lady of Bellefonte Hospital in Ashland, but that hospital does not have a maternity ward. *Id.* at ¶¶ 72-73. Twenty-four out of thirty-two counties in the Coventry network in Regions 7 and 8 do not have a hospital providing maternity services. *Id.* at ¶ 73.

Coventry also told its Members that 366 King's Daughters physicians could no longer be used and that a different primary care provider would need to be selected starting November 1, 2012. *Id.* at ¶ 76. Coventry has treated King's Daughters as an out-of-network provider since November 1, 2012, although no new thirty-day notice of termination has ever been issued. *Id.* at ¶¶ 89, 99. King's Daughters' Proposed Intervening Complaint alleges breach of contract, declaratory and injunctive relief regarding network adequacy, declaratory relief regarding threatened economic duress/conspiracy, violation of the prompt pay provision, fraud, bad faith, unconstitutional taking, and unjust enrichment against Coventry. Against the Cabinet, King's Daughters allege breach, any willing provider violations, unfair trade practices, tortious interference, and outrageous conduct. DE 119-3. King's Daughters notes a number of common questions of law and fact relating to the rates to be paid by Coventry to out-of-network providers, the adequacy of the provider networks in Regions 7 and 8, violation of the prompt pay laws, and the like. DE 119-1 at 9. The same counsel represents ARH and King's Daughters. *Id.* at 10.

Coventry objects to the motion to intervene on the grounds that Regions 7 and 8 are "vastly different in terms of their populations, demographics, roads, and other relevant characteristics" and that ARH and KDMC [King's Daughters], as health care providers, are vastly different institutions in every aspect." DE 123 at 2. It claims "extensive discovery will undoubtedly be required" and

asserts that King's Daughters should be required to file a separate action in the Eastern District of Kentucky. *Id.* at 5. Coventry further argues that "KDMC seeks to collude and combine forces with ARH, a horizontal competitor, to try to gain even more leverage to dictate the rates that Coventry must pay to KDMC." *Id.* at 2. Finally, Coventry claims it would be prejudiced by the intervention because that would open a "second front" in the pending litigation and would allow collusion between horizontal competitors in the health care market. *Id.* at 6.

The Cabinet's opposition to the new claims against it relies primarily on its summary judgment arguments regarding sovereign immunity, lack of jurisdiction and lack of justiciability. DE 124. The Cabinet admits, however, that "the vast majority of ARH's pending claims, and Kings Daughter's proposed claims, are state law contract claims aimed exclusively at Coventry." *Id.* at 6. It also argues that the network inadequacy claims are moot in light of the Cabinet's revised regulation, 907 KAR 17:015E filed December 21, 2012, which measures adequacy in either miles or minutes of driving time to providers. The Cabinet contends that "Kings Daughters simply wants a judicial forum to vent its nonjusticiable complaints about the implementation of managed care in Kentucky and its dissatisfaction that the Kentucky General Assembly has not budgeted more money for Medicaid." *Id.* at 12. It argues the motion to intervene is untimely because King's Daughters has known about the implementation of managed care in Kentucky and does not explain its delay. *Id.* at 13. With respect to prejudice, the Cabinet argues that granting intervention would require more briefing and would delay a decision on the Cabinet's motion for summary judgment. *Id.* at 13-14. Finally, the Cabinet argues that the proposed complaint would be futile for the same immunity and jurisdiction reasons raised in its motion for summary judgment against ARH. *Id.* at 14-21.

**II.     ANALYSIS**

Under Rule 24(b)(1)(B), a court may allow anyone who files a timely motion to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed.

3

R. Civ. P. 24(b)(1)(B). "Under Rule 24(b), a court ruling on a motion for permissive intervention must consider two factors: (1) whether the proposed intervenor 'has a claim or defense that shares with the main action a common question of law or fact'; and (2) 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.' Fed.R.Civ.P. 24(b)(1)(B)." *Vassalle v. Midland Funding LLC*, ___ F.3d ___, No. 11-3814, 2013 WL 673517 (6th Cir. Feb. 26, 2013). "[T]he purpose of the timeliness inquiry is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Blount-Hill v. Zelman*, 636 F.3d 278, 287 (6th Cir. 2011) (quoting *United States v. BASF-Inmont Corp.*, 52 F.3d 326 (6th Cir. 1995)).

In the present case, King's Daughters filed its motion to intervene shortly after Coventry stopped honoring the LOA on November 1, 2012. Prior to that time, King's Daughters had only a prospective claim regarding out-of-network rates and that was only if Coventry decided at some date to treat it as an out-of-network provider. Similarly, there was little or no claim for network inadequacy in Region 7 so long as King's Daughters remained a provider. The same is true of other claims, such as breach of contract and unjust enrichment. Coventry's arguments about undue delay are without merit.

While ARH's underlying case was filed in April 2012, little has happened since the issuance of a preliminary injunction in June 2012 and the appeal of same. The Sixth Circuit has not yet ruled on that appeal, and the injunction has expired by its own terms. Virtually no discovery has taken place. There is no scheduling order. At the time of this Opinion, the only pending motions are the Cabinet's motion for summary judgment against ARH and the Cabinet's motion to vacate an order holding it in contempt. ARH has no objection to the intervention. King's Daughters challenges the same 90 percent rule that ARH does and raises other similar claims against Coventry and the Cabinet; thus, the pending motion for summary judgment would turn on many of the same legal arguments for all Plaintiffs. These legal arguments would not be affected by any potential differences in regions or institutions and would not require any further briefing.

4

As the Cabinet admits, most of the claims in the proposed intervening complaint are against Coventry. Coventry would not be affected by the sovereign immunity and jurisdictional arguments raised by the Cabinet. The proposed intervening complaint is certainly not futile with respect to the claims against Coventry. Moreover, the Cabinet's motion for summary judgment is still pending before the Court and faces strong arguments from ARH. The success of the motion cannot be presumed at this time. Nor is it a foregone conclusion that the network adequacy claims are moot following the change in the Cabinet's regulation.

Coventry's claim of prejudice from opening a "second front" makes little sense in light of their suggestion that King's Daughters file a separate action. Coventry would have to defend itself on two fronts either way. Moreover, there would be efficiency in having the same legal issues decided in the same action, and the possibility of inconsistent decisions would be avoided. Additionally, Coventry's claims of "collusion" have no factual support. Coventry seems to ignore the evidence that it was Coventry who started the fights with ARH and King's Daughters in the first place.

### III.    CONCLUSION

**IT IS ORDERED** that the motion of King's Daughters to intervene in the present action [DE 119] is **GRANTED** and the Clerk is **DIRECTED** to file the Intervening Complaint and exhibits tendered with the motion [DE 119-3].

This March 28, 2013.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**