UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:12-CV-114-KSF

APPALACHIAN REGIONAL HEALTHCARE, et al.            PLAINTIFFS

and

ASHLAND HOSPITAL CORPORATION
d/b/a/ KING'S DAUGHTERS, et al.            INTERVENING PLAINTIFFS

vs.            **OPINION AND ORDER**

COVENTRY HEALTH AND LIFE
INSURANCE COMPANY, et al.            DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Coventry Health and Life Ins. Co. ("Coventry") to dismiss Plaintiffs' Second Amended Complaint [DE 141] and motion to dismiss King's Daughters' Intervening Complaint. For the reasons discussed below, the motions will be denied.

**I.    BACKGROUND**

Plaintiffs ("ARH") filed a First Amended Complaint on April 26, 2012. DE 5. The First Amended Complaint raised various claims against Coventry and the Commonwealth of Kentucky, Cabinet for Health and Family Services ("Cabinet"). Coventry and the Cabinet filed separate answers to the Amended Complaint, but neither moved to dismiss. DE 34, 35. King's Daughters moved to intervene on December 21, 2012, and ARH moved to file a Second Amended Complaint on January 11, 2013. DE 119, 122. These motions were granted on March 28, 2013. DE 132,133.

ARH's Second Amended Complaint did not raise any new claims against Coventry or the Cabinet. DE 135. Instead, it added the United States Department of Health and Human Services ("HHS"), the Centers for Medicare and Medicaid Services ("CMS"), and the Secretary of HHS and raised various claims against these new federal defendants. Nonetheless, Coventry and the Cabinet moved to dismiss the Second Amended Complaint because it incorporated the First

Amended Complaint. Any of Coventry's arguments that were ruled on adversely either before the motion to dismiss was filed or while it was pending will be addressed in summary fashion.

## II. ANALYSIS

### A. Standard for Motion to Dismiss

To withstand a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *abrogating Conley v. Gibson*, 355 U.S. 41 (1957). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (same). In ruling upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), all of a plaintiff's allegations are presumed true, and the complaint is construed in the light most favorable to the plaintiff. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005). Courts may consider a document referenced in the complaint and central to the plaintiff's claim without converting the motion to one for summary judgment. *Greenberg v. Lie Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

### B. Motion to Dismiss Second Amended Complaint

#### 1. Private Right of Action, End-Run Theory and State-Law Claims

Coventry insists ARH's claims against Coventry must be dismissed because the "Medicaid Act has created no rights that are privately enforceable in a court of law." DE 141-1 at 11. While the decision came after briefing on the present motion, this Court ruled to the contrary in its September 11, 2013 Opinion. DE 161; *Appalachian Regional Healthcare v. Coventry Health and Life Ins. Co.*, ___ F. Supp.2d ___, 2013 WL 4875027 at *7-10 (E. D. Ky. September 11, 2013).

Moreover, Coventry mischaracterizes all of ARH's state law claims against Coventry as merely "attempting to privately enforce provisions of the federal Medicaid statutes and regulations." DE 141-1 at 11. *See also id.* at 6. The mere fact that the Letter of Agreement ("LOA") between Coventry and ARH incorporated federal law does not convert ARH's state-law claims into federal ones. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 581 (7th Cir. 2012) ("The issue here ... is

2

not whether federal law itself provides private remedies, but whether it displaces remedies otherwise available under state law. The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law."). In response to an argument similar to Coventry's – that state-law claims are federal claims in disguise and an "impermissible end-run around the lack of a private action" – the Seventh Circuit held that argument itself is "really just an 'end-run' around well-established preemption doctrine...." *Id.* at 584. *See also Robinson v. Deutsche Bank Nat. Trust Co.,* No. 5:12-cv-590, 2013 WL 4552933 at *10 (E. D. N.C. April 9, 2013) ("For the same reasons stated by the Seventh Circuit in *Wigod*, this court concludes that Defendants' 'end-run' theory is without merit."). In the present case, Coventry does not argue preemption, and this Court agrees with the Seventh Circuit regarding an end-run theory. ARH can pursue its state-law claims.

Additionally, Coventry's reliance on *Astra, U.S.A., Inc. v. Santa Clara County*, 131 S. Ct. 1342 (2011), is misplaced. In *Astra*, a group of healthcare providers claimed to be third-party beneficiaries of a Pharmaceutical Pricing Agreement between the federal government and some drug companies regarding Medicaid price ceilings for the drugs. The providers sued the pharmaceutical companies for violations of the federal price ceilings. The parties conceded there was no private right of action under the federal statute. The court held, under the circumstances, that a suit to enforce the contract and one to enforce the statute were "in substance one and the same" and their treatment must be the same. *Id.* at 1345.

Here, by contrast, ARH is suing to enforce its own contract with Coventry, not as an alleged third-party beneficiary. In *Wigod*, the court concluded that *Astra* is limited to a third-party beneficiary context. *Wigod*, 673 F.3d at 584 n. 19. When the question is whether Congress intended to preclude a plaintiff from enforcing a contract to which the plaintiff is itself a party, "[t]hat is a preemption question not addressed in *Astra*." *Id.* The question in the present case is whether ARH can enforce its own contract with Coventry. *Astra* does not apply.

With respect to ARH's prompt pay claims, the allegations are that both federal and state prompt pay statutes were violated. Kentucky's requirements are more stringent than federal

statutes and can be enforced through KRS 446.070. The Sixth Circuit noted that "the prompt-pay requirements also are incorporated into Kentucky's MCO contracts" and that the contract "mirrored the statutory prompt-pay requirements." *Appalachian Regional Healthcare, Inc. v. Coventry*, 714 F.3d 424, 427 (6th Cir. 2013). ARH can enforce these contractual provisions. Similarly, ARH can proceed with its bad faith claims for Coventry's behavior relating to the terms of the contract.

Coventry argues ARH's fourth claim is that "ARH is a Third-Party Beneficiary of Medicaid Prompt Pay Requirements." DE 141-1 at 4. The record shows that ARH is not claiming to be a beneficiary of any "requirement" or "statute." Instead, it claims to be a third-party beneficiary of the MCO Agreement between the Cabinet and Coventry. Thus, this is also a state-law claim.

Coventry contends that ARH is "attacking published Medicaid reimbursement amounts." This Court has already held that there is no attack on the published Medicaid rates. DE 130 at 3. Instead, ARH attacks the agreement between the Cabinet and Coventry to pay only 90 percent of the published rates for emergency services and argues this is a conspiracy to effect an unlawful taking. DE 5, ¶¶ 120-22. This Court entered judgment that Coventry must pay 100 percent of the Medicaid rates to ARH for emergency services provided to Coventry members, which ruling preceded the filing of Coventry's motion to dismiss. DE 130 at 7. Unquestionably, this argument is without merit.

Coventry next describes ARH's claim of unjust enrichment as another "attack on published Medicaid reimbursement amounts." DE 141-1 at 5. Again, this Court granted ARH's motion for summary judgment on the unjust enrichment claim before Coventry's motion to dismiss was filed. DE 130 at 7-8. ARH is entitled to reimbursement for the "reasonable value" of non-emergency out-of-network services. The Court also recognized that it had "diversity jurisdiction over the state law questions raised by ARH." *Id.* at 3. This argument is without merit.

ARH's Count VIII is not for "Breach of Medicaid Any Willing Provider statutes" as Coventry states. DE 141-1 at 5. Instead, it is plainly for violations of "Kentucky's Any Willing Provider Laws. *See* KRS 304.17A-270," which applies to all insurers in Kentucky without regard to Medicaid. DE 5, ¶ 134. Counts IX and X allege tortious interference and outrageous conduct. DE 5 ¶¶ 137-149.

4

Coventry argues they are merely attacks "on the workings of the statutory and regulatory Medicaid MCO system couched as state law ... claim[s]." DE 141-1 at 5. Instead, ARH relies on KRS 304.17A-150(1)(a), (b), along with other state law violations. These state law claims may proceed.

    2.    Standing

Coventry argues that "[f]our of ARH's claims – Claims 2, 6, 11 and 12 – are either explicitly or implicitly based on federal Medicaid network adequacy requirements." DE 141-1 at 14. Coventry is mistaken. Count II concerns Prompt Pay violations, not network adequacy. Court VI deals with the "90 percent" provision in the MCO agreement. The Court is unable to find in any of ARH's complaints a Claim 11 or Claim 12, or any paragraphs numbered 169-74, 179-80. Moreover, network adequacy is merely an element of certain claims (such as breach of contract). ARH does not make any claim solely for violation of network adequacy requirements. The inclusion of network adequacy requirements in Coventry's LOA with ARH should have precluded Coventry from abruptly dropping ARH from its network and leaving Coventry without an adequate network in Region 8. The Court found evidence of harm to ARH's interests from the termination of the LOA. DE 67 at 20-21. ARH has standing to proceed with its claims.

    3.    Administrative Exhaustion

Coventry argues that ARH had some obligation to pursue an administrative appeal with the Cabinet before asserting its private causes of action against Coventry. Coventry breached its private agreement with ARH and otherwise gave ARH the right to sue. Coventry is not an "administrative agency." There is no administrative appeal obligation between private parties.

**B.    Motion to Dismiss King's Daughters Intervening Complaint**

The factual background between Coventry and King's Daughters is summarized in this Court's Opinion dated March 28, 2013. DE 132. Coventry's motion to dismiss the Intervening Complaint was filed on the same day as, and is comprised of almost verbatim arguments found in, Coventry's motion to dismiss ARH's Second Amended Complaint. It is not necessary to repeat each holding with the substitution of King's Daughters in place of ARH. For the same reasons that

ARH's Second Amended Complaint will not be dismissed, neither should the Intervening Complaint of King's Daughters.

A few of King's Daughters' claims are couched in different terms either by Coventry or by King's Daughters itself. For example, Count III in the Intervening Complaint requests declaratory relief for "Threatened Economic Duress/Conspiracy." The allegations in that count, however, are basically the same as those in ARH's Count V of the First Amended Complaint regarding an unconstitutional taking. The problem is the Cabinet's agreement with Coventry that out- of-network services would be reimbursed at only 90 percent of the Medicaid rate. This Court has already held that ARH is not bound by the agreement between the Cabinet and Coventry. DE 130 at 7. This decision predated the present motion to dismiss by a week and a half. Dismissal is certainly not warranted on this claim.

Count II of the Intervening Complaint is headed "Declaratory and Injunctive Relief/Network Adequacy." DE 119-3 at 26. The allegations, however, focus on incorporation of adequacy provisions in the LOA between Coventry and King's Daughters and Coventry's refusal to pre-authorize care at King's Daughters for persons who are entitled to service at King's Daughters, such as a person entitled to Continuation of Benefits. As with ARH, Coventry terminated its contract with King's Daughters, leaving the region with an allegedly inadequate network and alleged harm to the provider. The claim is not based solely on "federal Medicaid network adequacy requirements" by themselves, as Coventry contends. DE 142-1 at 15. Instead, it is based on contractual obligations to King's Daughters, which King's Daughters clearly has standing to assert.

### III. CONCLUSION

**IT IS ORDERED** that Coventry's motions to dismiss Plaintiffs' Second Amended Complaint [DE 141] and to dismiss King's Daughters' Intervening Complaint [DE 142] are **DENIED**.

This January 24, 2014.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**