UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION – LEXINGTON

| | |
|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC., et al.,<br><br>   Plaintiff,<br><br>V.<br><br>COVENTRY HEALTH AND LIFE INSURANCE CO.,<br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>   Defendants. | CIVIL ACTION NO. 5:12-114-KKC<br><br><br>**OPINION AND ORDER** |

   This matter is before the Court on two related motions.

   First, is a motion to remand filed by the defendant United States Department of Health and Human Services (DE 274) in which it requests that the Court remand this matter to the department so that it can complete certain administrative proceedings regarding Kentucky's Medicaid program. After briefing on that motion was completed, the department filed notices stating that it has now completed those administrative proceedings.

   The second motion (DE 324) at issue was filed by the plaintiffs after the department filed the notices stating that it had completed the administrative proceedings which were the subject of the motion to remand. With their motion, the plaintiffs ask the Court to require the department to file the administrative record from these latest proceedings.

   Because the department has completed the administrative proceedings for which it sought the remand, the Court will deny as moot the motion to remand. The Court will also deny the plaintiffs' motion to require the department to produce the administrative record of those proceedings. The plaintiffs' claims are not based on these most recent proceedings

and the plaintiffs have not explained how the requested administrative record is relevant to their claims in this action.

## I. Background

The plaintiffs in this action – referred to collectively as Appalachian Regional – provide healthcare in Kentucky. With this action, they challenge certain actions taken by the state and federal governments and a private managed care organization in the administration of Kentucky's Medicaid program.

The purpose of that program is to provide government funding for medical care of individuals who cannot afford to pay for that care on their own. *Arkansas Dept. of Health and Human Services v. Ahlborn*, 547 U.S. 268, 275 (2006). Through the program, the federal government provides funds to help states provide healthcare to their needy citizens. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). Though states are not required to participate in Medicaid, they all do. *Arkansas Dept. of Health and Human Services*, 547 U.S. at 275.

The Department of Health and Human Services is the federal agency that administers the program. *Id*. It does so through the Centers for Medicare and Medicaid Services (CMS). *Id*. The Court will refer to the federal department and CMS collectively as CMS in this opinion. The Kentucky Cabinet for Health and Family Services is the state agency that administers Kentucky's Medicaid program. KRS 194A.030(2). CMS and the state cabinet are both defendants in this action.

To qualify for federal financial assistance to administer their Medicaid programs, states must comply with certain federal requirements. *Va. Hosp. Ass'n*, 496 U.S. at 502. For example, the state must establish a plan for reimbursing health-care providers for the medical services they provide to needy citizens. *Id.*

Prior to November 1, 2011, the Kentucky state cabinet directly reimbursed doctors and hospitals for the services they provided to Medicaid recipients pursuant to a fee schedule set by the state. This is known as a fee-for-services system. *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 426 (6th Cir. 2013).

In 2011, however, CMS approved Kentucky's application for a waiver that permits the state to administer its Medicaid program as a managed-care program instead of reimbursing providers under the traditional fee-for-services model. (DE 274-2, Glaze Dec. ¶ 5.) This was done in an effort to control "ballooning Medicaid costs and resulting pressures on the state's budget." *Appalachian Reg'l*, 714 F.3d at 426.

Under a managed-care program, the Cabinet no longer directly reimburses doctors and hospitals for the healthcare services they provide. Instead, the Cabinet now pays a group of middlemen called managed care organizations (MCOs). *Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins, Co.*, 5:12-CV-114, 2012 WL 2359439, at * 1 (June 20, 2012). The state awards contracts to certain MCOs, which are charged with managing healthcare services for Medicaid beneficiaries who sign up to become "members" of one of the MCOs. *Id*.

The Cabinet pays each MCO a flat monthly fee – called a capitation payment – for the healthcare of each of the MCO's members who is a Medicaid recipient. *Id*. The capitation payment is a set fee that the Cabinet pays for each MCO member, whether or not the member actually receives any health services that month. 42 C.F.R. § 438.2. The MCO then pays the healthcare providers for the healthcare services actually rendered to the MCO's members. "So the MCO bears the risk that the costs of care may exceed the capitation payment. But on the other side, it stands to profit if beneficiaries use fewer services." *Appalachian Reg'l Healthcare, Inc.*, 714 F.3d at 426.

The reason that the state converted to the managed-care model was to "improve healthcare access and quality by eliminating unnecessary care, enhancing coordination among providers, emphasizing preventative care, and promoting healthy lifestyles." *Id*. The state also believed that the conversion would save the state money. *Id*.

CMS must approve both the state's contracts with the MCOs and the capitation payments to be paid to the MCOs. 42 C.F.R. §§ 438.6(a), 438.806(c). The capitation payments are set forth in the contracts between the Cabinet and each MCO.

The Cabinet awarded contracts to three MCOs: Coventry Health and Life Ins. Co., Kentucky Spirit Health Plan, Inc., and Wellcare of Kentucky, Inc. *Appalachian Reg'l Healthcare, Inc.*, 714 F.3d at 426. The MCOs were charged with administering healthcare in seven of the state's eight Medicaid regions. One of those regions is Region 8 which is made up of 19 counties in eastern and southeastern Kentucky that "are among the most economically depressed, underserved, and medically needy in the Commonwealth." *Id*. at 426-27.

As part of the waiver approval, CMS reviewed the contracts for compliance with the Medicaid Act and regulations. 42 U.S.C. §1396b(m); 42 C.F.R. § 438.806. CMS approved each of the contracts, including the designated capitation rates, for the period of November 1, 2011 to June 30, 2014. (DE 135-3, CMS Letter Oct. 28, 2011; DE 274-2, Glaze Decl. ¶¶ 7-12.) These initial MCO contracts expired on June 30, 2014. (DE 274-2, Glaze Decl. ¶10.)

The MCOs, in turn, contract with healthcare providers who make up each MCO's healthcare-provider "network." *Appalachian Reg'l Healthcare, Inc.*, 2012 WL 2359439, at *1. Coventry entered into a letter agreement with Appalachian Regional making Appalachian Regional a provider in Coventry's provider network. *Appalachian Reg'l Healthcare, Inc.*, 714 F.3d at 426-27. Appalachian Regional operates hospitals and other

4

medical facilities that serve citizens in Region 8. *Id*. at 427. Its patients are sicker than other Medicaid patients, meaning it costs MCOs more to provide healthcare for Appalachian Regional's patients. *Id*. a 428. As the Sixth Circuit explained, "[h]aving Appalachian in its network caused Coventry to lose money, as the capitation rate it negotiated with Kentucky was insufficient to cover the costs of these members' care." *Id*.

Thus, on March 28, 2012, Coventry notified Appalachian Regional that it was terminating the letter agreement effective May 4, 2012. *Id*. Coventry further explained that it would only enter into a new contract with Appalachian Regional if the new agreement allowed Coventry to pay Appalachian Regional less for its healthcare services than the letter agreement had permitted. (DE 8–8, p. 2, ¶ 5.)

Appalachian Regional then filed this action, at first asserting claims against only Coventry and the Cabinet. It later amended its complaint to assert claims against CMS. (DE 135, Second Amended Complaint.) The only claims at issue on the two motions currently before the Court are Appalachian Regional's claims against CMS.

In its complaint against CMS, Appalachian Regional asserts that it brings its claims against CMS to "challenge the decision of the Secretary of the Department of Health and Human Services made though its Centers for Medicare and Medicaid Services to approve the Section 1915(b) Waiver for the Kentucky Medicaid Program."(DE 135, Second Amended Complaint at 3.)

## II.  Analysis

In its motion to remand, CMS asks the Court to remand Appalachian Regional's claims against it to CMS for further administrative proceedings.

This is the only relief that CMS has properly requested with its motion to remand. In its memorandum, it states that this matter should be remanded only if the Court does not dismiss Appalachian Regional's claims against it. (DE 274-1, Mem. at 13.) It refers the

5

Court to a footnote in in its memorandum in which it states that it disagrees with an opinion by the late Judge Karl Forester that denied CMS's motion to dismiss the claims against it. (DE 274-1, Mem. at 11 n.5.) This case was initially assigned to Judge Forester and was later transferred to the undersigned.

With this motion to remand, CMS has not asked the Court to reconsider Judge Forester's decision or in any other way properly moved for the Court to dismiss the claims against it. *See* Fed. R. Civ. P. 7 (b) (stating that a "request for a court order must be made by motion" and must "state with particularity the grounds for seeking the order.")

Accordingly, the Court addresses only CMS's request to remand this matter back to the agency. In the motion to remand, CMS argued that Appalachian Regional's claims against it are based on its approval of Kentucky's waiver program and its approval of the initial MCO contracts. That approval occurred in 2011 and there is no dispute that those contracts are now expired. CMS asserted that it was in the process of reviewing Kentucky's MCO contracts for fiscal years 2015 and 2016. It asked the Court to remand this matter to it for final agency action on those contracts. (DE 305, Reply at 2; DE 325, Response at 4.)

The request for a remand is now moot. After the briefing on the motion to remand was completed, CMS filed a status report (DE 322) stating that it has already approved Kentucky's MCO contracts for fiscal years 2015 and 2016 ending June 30, 2016. CMS filed a second status report (DE 323) stating that it has also approved Kentucky's application to renew its managed-care waiver program. The renewed waiver is effective until October 31, 2017. Thus, this matter need not be remanded in order for CMS to complete these proceedings as CMS requested. It has already completed them.

As to Appalachian Regional's motion to require CMS to file the administrative record regarding these most recent proceedings, CMS argues that these materials are not relevant to Appalachian Regional's claims. CMS argues that Appalachian Regional's claims

6

are based on CMS's approval of Kentucky's initial waiver and MCO contracts that occurred in 2011. CMS has already filed the administrative record regarding those proceedings. CMS argues that, because Appalachian Regional has not asserted any claims against CMS based on its most recent waiver and contract approvals, the administrative record of those proceedings is irrelevant to these claims.

In order to address the request for the administrative record, it is necessary to understand precisely what claims Appalachian Regional is asserting against CMS.

On this motion to remand, Appalachian Regional describes its claims against CMS as like a pair of scissors, consisting of two "blades." (DE 301, Response at 1.) First, Appalachian Regional asserted in its complaint that CMS failed to fulfill its obligation to determine whether the capitated payments that the state proposed to pay the MCOs were made on an "actuarially sound basis." (DE 301, Response at 1; DE 135, Second Amended Complaint ¶ 53, 74.) Appalachian Regional now concedes that this portion of its claim is moot. In fact, it states that the capitated rates are "more than adequate and actuarially sound now." (DE 301, Response at 2.)

Appalachian Regional asserts that the second "blade" of its claim against CMS is that CMS has failed to comply with its obligation to ensure that each MCO has an "adequate" network of providers. (DE 301, Response at 1; DE 135, Second Amended Complaint, ¶¶ 26-52.) It argues that, in order to be deemed a "Medicaid managed care entity," under the Medicaid statute, an MCO must maintain a network of healthcare providers that ensures its members have access to the same healthcare services that they would have under the fee-for-service model and under state commercial insurance laws. (DE 135, Second Amended Complaint, ¶¶ 28-31, 33.) Appalachian Regional argues that none of the three MCOs qualified as "Medicaid managed care entities" at the time that CMS approved the waiver in 2011. (DE 135, Second Amended Complaint, ¶34.)

7

Appalachian Regional further argues that "since the very beginning of the Waiver and at all times since, the Cabinet and CMS have allowed the MCOs to establish network adequacy by simply promising to send their Members to out-of-network hospitals." (DE 135, Second Amended Complaint ¶ 38.) It argues that "MCOs have been able to operate without adequate networks and are able to terminate provider contracts with hospitals and other providers across the state in this manner because neither the Cabinet nor CMS has required that network adequacy standards be followed." (DE 135, Second Amended Complaint ¶ 52.)

In the opinion that permitted Appalachian Regional to amend its complaint to assert these claims against CMS, Judge Forester sorted through the kinds of claims that Appalachian Regional can assert against a federal agency. First, he determined that aggrieved parties can "challenge the affirmative approval of state Medicaid plan amendments or waivers." *Appalachian Reg'l Healthcare v. Coventry Health and Life Ins, Co.*, 5:12-CV-114, 2013 WL 1293793, at * 2 (March 28, 2013). Judge Forester distinguished such a claim from a claim that CMS failed to take some sort of action against the state, such as imposing sanctions against it. He recognized that CMS's decision "whether to bring an enforcement action against the Commonwealth is an action committed to agency discretion by law and is not subject to court review." *Id.* (quoting *Concilio de Salud Integral de Loiza, Inc. v. U.S. Department of Health and Human Services,* 538 F.Supp.2d 139, 145-46 (D.D.C. 2008)).

Judge Forester permitted Appalachian Regional's claims against CMS to proceed only after finding that they "are premised on CMS's failure to comply with specific federal statutory, mandatory prerequisites when approving the Waiver, rather than some discretionary function." *Id*. Thus, Judge Forester determined, Appalachian Regional's claims are "grounded in federal agency action that may be reviewed under the APA." *Id*.

8

In a later opinion, Judge Forester again recognized that "an agency's decision not to prosecute or enforce is a decision generally committed to an agency's absolute discretion." (DE 183, Opinion at 3.) Judge Forester denied CMS's motion to dismiss the claims against it finding that "Plaintiffs in the present case . . . are not seeking review of a refusal to prosecute or enforce. Instead, they seek review of an affirmative action by the agency to grant a waiver." (DE 183, Opinion at 3.) In making this finding, Judge Forester noted that the complaint against CMS specifically states that is brought to "challenge the decision of the Secretary . . .to approve the Section 1915(b) Waiver for the Kentucky Medicaid Program." (DE 183, Opinion at 3 n1; DE 135, Second Amended Complaint at 3.) Judge Forester again distinguished the Appalachian Regional's claims from claims seeking to compel a federal agency to commence an enforcement action. (DE 183, Opinion at 4.)

Appalachian Regional has never contested Judge Forester's findings regarding the claims it asserts against CMS. Nor has it asserted a claim based on CMS's most recent administrative proceedings. Because Appalachian Regional's claims against CMS are based only on the 2011 approvals and on the MCO contracts existing at that time, the Court must deny the motion to require CMS to file the administrative record from its most recent proceedings. Appalachian Regional has not demonstrated how the record is relevant to its claims in this action.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motion to remand (DE 274) filed by the Department for Health and Human Services is DENIED as moot;

2) the plaintiffs' motion to require the filing of the administrative record (DE 324) is DENIED; and

9

3) if the Department of Health and Human Services wishes to file a response to the plaintiffs' motion for summary judgment against (DE 288), it SHALL FILE a response within 30 days from the entry date of this order. The plaintiffs may file a reply pursuant to the Local Rules.

Dated January 8, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY