UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION – LEXINGTON

| | |
|---|---|
| APPALACHIAN REGIONAL HEALTHCARE, INC., et al.,<br><br>    Plaintiff,<br><br>v.<br><br>COVENTRY HEALTH AND LIFE INSURANCE CO.,<br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 5:12-114-KKC<br><br><br>**OPINION AND ORDER** |

This matter is before the Court on the cross motions for summary judgment (DE 288, 329) filed by the plaintiffs and certain defendants including the Centers for Medicare and Medicaid Services and on the plaintiffs' motion to file a supplemental complaint (DE 332).

    **I.    Background**

The plaintiffs – referred to collectively as Appalachian Regional – provide healthcare in Kentucky. With their complaint, they challenge certain actions by the state and federal governments and a private managed care organization in the administration of Kentucky's Medicaid program.

The purpose of that program is to provide government funding for medical care of individuals who cannot afford to pay for that care on their own. *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). Through the program, the federal government provides funds to help states deliver healthcare to their needy citizens. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).

The Department of Health and Human Services is the federal agency that administers the program. *Ahlborn*, 547 U.S. at 275. It does so through the Centers for Medicare and Medicaid Services (CMS). *Id*. The Kentucky Cabinet for Health and Family Services is the state agency that administers Kentucky's Medicaid program. KRS §§ 194A.010(1), 194A.030(2). CMS and the state cabinet are both defendants in this action.

To qualify for federal financial assistance to administer their Medicaid programs, states must comply with certain federal requirements. *Va. Hosp. Ass'n*, 496 U.S. at 502. For example, the state must establish a plan for reimbursing healthcare providers for the medical services they provide to needy citizens. *Id*.

Prior to November 1, 2011, the Kentucky state cabinet directly reimbursed doctors and hospitals for the services they provided to Medicaid recipients pursuant to a fee schedule set by the state. This is known as a fee-for-service system. *See Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 426 (6th Cir. 2013). In 2011, however, CMS approved Kentucky's application for a waiver that permits the state to administer its Medicaid program as a managed-care program instead of reimbursing providers under the traditional fee-for-service model. (DE 274-2, Glaze Dec. ¶¶ 5, 6.) This was done in an effort to control "ballooning Medicaid costs and resulting pressures on the state's budget." *Appalachian Reg'l*, 714 F.3d at 426.

Under a managed-care program, the Cabinet no longer directly reimburses doctors and hospitals for the healthcare services they provide. Instead, the Cabinet now pays a group of third-party administrators called managed care organizations (MCOs). *Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 5:12-CV-114, 2012 WL 2359439, at * 1 (E.D. Ky. June 20, 2012). The state awards contracts to certain MCOs,

2

which are charged with managing healthcare services for Medicaid beneficiaries who sign up to become "members" of one of the MCOs. *Id.*

The Cabinet pays each MCO a flat monthly fee – called a capitation payment – for the healthcare of each of the MCO's members who is a Medicaid recipient. *Id.* The capitation payment is a set fee that the Cabinet pays for each MCO member, whether or not the member actually receives any health services that month. 42 C.F.R. § 438.2. The MCO then pays the healthcare providers for the healthcare services actually rendered to its members. "So the MCO bears the risk that the costs of care may exceed the capitation payment. But on the other side, it stands to profit if beneficiaries use fewer services." *Appalachian Reg'l*, 714 F.3d at 426.

The state converted to the managed-care model in order to "improve healthcare access and quality by eliminating unnecessary care, enhancing coordination among providers, emphasizing preventative care, and promoting healthy lifestyles." *Id.* The state also believed that the conversion would save it money. *Id.*

The Cabinet initially awarded contracts to three MCOs: Coventry Health and Life Ins. Co., Kentucky Spirit Health Plan, Inc., and WellCare of Kentucky, Inc. *Appalachian Reg'l*, 714 F.3d at 426. The MCOs were charged with administering healthcare in seven of the state's eight Medicaid regions. One of those regions is Region 8 which is made up of 19 counties in eastern and southeastern Kentucky that "are among the most economically depressed, underserved, and medically needy in the Commonwealth." *Id.* at 426-27.

As part of the waiver approval, CMS must approve both the state's contracts with the MCOs and the capitation payments to be paid to the MCOs. 42 C.F.R. §§ 438.6(a),(c), 438.806(c). The capitation payments are set forth in the contracts between the Cabinet and each MCO. CMS reviewed the contracts for compliance with the Medicaid Act and

3

regulations. 42 U.S.C. §1396b(m); 42 C.F.R. § 438.806. CMS approved each of the contracts, including the designated capitation rates, for the period of November 1, 2011 to June 30, 2014. (DE 135-3, CMS Letter Oct. 28, 2011; DE 274-2, Glaze Decl. ¶¶ 7-12.) These initial MCO contracts expired on June 30, 2014. (DE 274-2, Glaze Decl. ¶13.)

The MCOs, in turn, contracted with healthcare providers who make up each MCO's healthcare-provider "network." *Appalachian Reg'l*, 2012 WL 2359439, at *1. Each MCO's network must meet certain state and federal standards. These "so-called network-adequacy requirements . . . obligate an MCO to maintain a provider network that guarantees certain services are accessible to its members within specified times or distances from their homes." *Appalachian Reg'l*, 714 F.3d at 427.

For healthcare services rendered to their members, the MCOs pay healthcare providers who are *in their network* the amount set forth in the contracts between the parties. (DE 278-1, Mem. at 8.) Coventry entered into a temporary agreement with Appalachian Regional, which made Appalachian Regional a provider in Coventry's provider network. *Id*. The agreement provided that Coventry would pay 107.5 percent of the Medicaid rate for inpatient services. (DE 278-19, Agreement, Ex. A.)

For healthcare services rendered to an MCO's members by healthcare providers who are *not in their network* – out-of-network providers – the amounts paid to providers are governed by other guidelines. For emergency services, federal law prohibits out-of-network providers from charging more than 100 percent of the Medicaid rate. 42 U.S.C. § 1396u-2(b)(2)(D). The MCO agreement between Coventry and the Cabinet provides that "Covered Services shall be reimbursed at 100 percent of the Medicaid fee schedule/rate until January 1, 2012 and after January 1, 2012, at 90% of the Medicaid fee schedule/rate." (DE 54-2, MCO Agreement, § 29.2.) At oral argument, the Cabinet's counsel argued that this provision was intended to establish only a "floor, not a ceiling." (DE 321, Tr. at 74.)

4

Appalachian Regional operates hospitals and other medical facilities that serve citizens in Region 8. *Appalachian Reg'l*, 714 F.3d at 427. Appalachian Regional's patients are generally sicker than other Medicaid patients, meaning it costs MCOs more to provide healthcare for Appalachian Regional's patients. *Id*. at 428. "Initially, when Coventry was establishing its provider network in Region 8, it was told that it had to include Appalachian in its network to meet Kentucky's network-adequacy standards. Coventry assumed its competitors had to do the same, but it was wrong: the Cabinet did not require Kentucky Spirit to do so." *Id*.

This upset Coventry because having to serve Appalachian Regional's relatively costlier patients was causing Coventry to lose money. *Id*. Coventry believed that a disproportionate number of the sicker Eastern Kentucky population joined Coventry so they could receive in-network healthcare from Appalachian Regional. (DE 302, Response at 7.) The capitation rate paid by the state did not cover the medical services these patients incurred. *Appalachian Reg'l*, 714 F.3d at 428. This "meant Coventry was disadvantaged relative to a competitor MCO like Kentucky Spirit that was not required to cover—and pay the higher cost of caring for—Appalachian's sicker patients." *Id*.

The agreement between Coventry and Appalachian Regional provided that it would remain in force until the sooner of the execution of a final agreement or June 30, 2012. (DE 278-20, Amendment, ¶1.) The agreement further provided that either party could terminate it, with or without cause, with 30 days written notice. (DE 278-19, Agreement, ¶17.) By letter dated March 29, 2012, Coventry notified Appalachian Regional that it was

5

terminating the temporary agreement effective May 4, 2012. *Appalachian Reg'l*, 714 F.3d at 428. (DE 278-1, Mem. at 10; DE 278-22, Termination Letter.)[1]

Appalachian Regional then filed this action, asserting claims against Coventry, the Cabinet, CMS, the Department of Health and Human Services (HHS) and its secretary, Sylvia Mathews Burwell. (DE 5, First Amended Complaint; DE 135, Second Amended Complaint.) The only claim at issue on this motion is Appalachian Regional's claim against CMS, HHS, and Secretary Burwell (collectively, "CMS"). CMS argues that the claim against it is moot because the claim is based on actions it took in approving Kentucky's initial waiver and that waiver is now expired.

As discussed, CMS approved Kentucky's waiver in 2011 for a two-year period ending October 31, 2013. CMS granted several extensions of the waiver period in order to allow Kentucky to assess the waiver and to conduct research and gather additional information to renew the waiver. (DE 340-1, Glaze Decl. ¶¶ 5-20.) The last of these extended the waiver until October 31, 2015 and required Kentucky to submit a renewal waiver application by August 10, 2015. (DE 340-1, Glaze Decl. ¶ 20.) On August 5, 2015, Kentucky submitted an application to renew its waiver. (DE 340-1, Glaze Decl. ¶ 21.) On October 16, 2015, CMS approved Kentucky's request to renew the waiver. The waiver now expires October 31, 2017. (DE 340-1, Glaze Decl. ¶ 22.)

In 2015, CMS also approved new MCO contracts for fiscal years 2015 and 2016. Those contracts expired June 30, 2016. While the initial MCO contracts were with

---

[1] At oral argument, Coventry's counsel argued that Coventry did not actually terminate the contract but that instead it let the contract expire on June 30, 2012. (DE 321, Tr. at 66-67.) Nevertheless, by letter dated March 29, 2012, Coventry's Executive Vice President Kevin P. Conlin explicitly stated that "pursuant to Section 17 of the Binding Letter of Agreement. . . notice is hereby given of Coventry's decision to terminate the BLOA. The date of termination is May 4, 2012. . . ." (DE 278-22, Termination Letter.) Likewise, in its memorandum, Coventry states, "On March 28, 2012, Kevin Conlin, Executive Vice President of Coventry, sent ARH a notice of termination per the terms of the LOA. . . The effective date of the termination was May 4, 2012. . . ." (DE 278-1, Mem. at 10.)

Coventry, Kentucky Spirit Health Plan, Inc., and WellCare of Kentucky, Inc., the new contracts were with a total of 5 MCOs: Coventry, WellCare, Anthem, Humana, and Passport. (DE 322-2, Letter.)

Appalachian Regional's complaint against CMS does not assert any claims based on the waiver renewal or the newer MCO contracts. This is because the complaint was filed before CMS renewed Kentucky's waiver or approved the new contracts. In its motion for summary judgment, CMS asserts that, because the initial waiver and MCO contracts have expired, the claim made in Appalachian Regional's initial complaint against it is now moot. In response, Appalachian Regional has filed a motion to supplement its complaint to assert a claim that CMS acted arbitrarily and capriciously in renewing the waiver.

## II.     Analysis

The Court is hesitant to order Appalachian Regional to file a supplemental complaint. This action has been pending for some time and the deadline for amending the pleadings passed more than a year ago. Nevertheless, the filing of a new complaint against CMS – one that succinctly describes Appalachian Regional's current claim against CMS in a single pleading – is the best route toward resolution of this matter.

Appalachian Regional's claim against CMS has undergone significant changes since the filing of its initial complaint against CMS. This is either because of the Court's prior rulings on the claim or because of changed circumstances or a combination of both. Appalachian Regional's original complaint against CMS – the second amended complaint in this action – asserts that Appalachian Regional challenges the "decision of the Secretary of the Department of Health and Human Services made through its Centers for Medicare and Medicaid Services to approve the Section 1915(b) Waiver for the Kentucky Medicaid Program." (DE 135, Second Amended Compl. at 3.) It alleges that the Secretary's actions

were "arbitrary, capricious, abuses of discretion and 'not in accordance with law.'" (DE 135, Second Amended Compl. at 3.)

Appalachian Regional alleges that "CMS violated multiple statutory directives" in approving the waiver. (DE 135, Second Amended Compl. at 10.) It specifically charges that CMS's approval of the waiver violated federal statutes and regulations that required CMS to make the six following determinations before approving a waiver:

1) whether the three MCOs that the Cabinet originally contracted with were in fact MCOs as that term is defined under the Medicaid Act. Appalachian Regional asserts that this claim "goes primarily to network adequacy and accessibility of services." (DE 135, Second Amended Compl. ¶¶ 26-52.)

2) whether the capitated rates to be paid to the MCOs were "actuarially sound." (DE 135, Second Amended Compl. ¶¶ 53-74.)

3) whether the waiver would permit MCOs to discriminate against Medicaid beneficiaries based on health status. (DE 135, Second Amended Compl. ¶¶ 75-80.)

4) whether the waiver would permit MCOs to engage in marketing fraud. (DE 135, Second Amended Compl. ¶¶ 81-85.)

5) whether the waiver would permit MCOs to violate laws requiring them to promptly pay healthcare providers for their services. (DE 135, Second Amended Compl. ¶¶ 86-92.)

6) whether the waiver would permit MCOs and the state to insufficiently pay providers for emergency healthcare services rendered to Medicaid beneficiaries. (DE 135, Second Amended Comp. ¶¶ 93-106.)

In its motion for summary judgment on its claims against CMS, however, Appalachian Regional describes its claim against CMS as consisting of only *two* "blades." (DE 288, Mem. at 1.) Appalachian Regional describes the first "blade" as a claim that CMS approved the waiver without first determining whether the capitated payments that the state proposed to pay the MCOs were made on an "actuarially sound basis." (DE 288, Mem. at *1.) As the Court has noted previously, Appalachian Regional now concedes that this

8

portion of its claim is moot. In fact, it states that the capitated rates are "more than adequate and actuarially sound now." (DE 288, Mem. at 2.)

Appalachian Regional asserts that the second "blade" of its claim against CMS is that CMS failed to comply with its obligation to ensure that the state had meaningful network-adequacy standards. (DE 228, Mem. at 1.) Appalachian Regional asserts that "[t]here are no actual network adequacy standards for hospitals" and that "CMS has failed to fulfill its statutory duties" in this regard.

Thus, it would appear that Appalachian Regional no longer argues that CMS has failed to fulfill all six statutory duties set forth in its complaint. Now its claim against CMS consists solely of a charge that, in approving the waiver, CMS failed to first determine whether Kentucky had sufficient network-adequacy standards in place.

In its motion for summary judgment, Appalachian Regional appears to argue that CMS has violated this duty by permitting the Cabinet to measure network adequacy by faulty means. Appalachian Regional points that out that a Kentucky regulation provides that, for Coventry's members who live in rural areas, Coventry's provider network must include a hospital that is located within 60 *minutes* of each member's residence. 907 KAR 17:015, Section 2 (7)(a). Appalachian Regional does not appear to complain about the regulation itself but with how the Cabinet determines whether an MCO is in compliance with it.

Appalachian Regional complains that the Cabinet finds this requirement met if the MCO's members live within a 60-*mile* radius of the hospital – not within 60 minutes as the regulation requires. Appalachian Regional also complains that the Cabinet finds compliance with the regulation as long as any hospital in an MCO's network is within a 60-mile radius of each member's residence, regardless of what services the hospital provides. (DE 288, Mem. at 22-28.) Appalachian Regional does not state precisely what services the

9

hospital must have in order to meet adequate-network standards but it mentions obstetrics, intensive care, and psychiatric care. (DE 288, Mem. at 23, n.61.)

Though the Court is not entirely certain that it has accurately captured Appalachian Regional's current claim against CMS, it is clear that Appalachian Regional's claim against CMS has undergone significant changes during the pendency of this action and has been considerably narrowed and clarified. The filing of a supplemental complaint which explicitly sets forth Appalachian Regional's current claim would promote clarity and a speedier resolution of the claim. Further, in a footnote its current motion for summary judgment, CMS incorporates by reference arguments made in its motion to dismiss regarding traceability and redressability. (DE 328, Mem. at 11, n.3.) This is not a proper way to reassert such arguments. Nevertheless, the Court finds that it may be beneficial to revisit those arguments given the changes to and clarification of Appalachian Regional's claim against CMS during the pendency of this action. For these reasons, good cause exists to permit Appalachian Regional to file a supplemental complaint.

The Court will not, however, order the tendered supplemental complaint filed in the record (DE 332-1). The supplemental complaint to be filed by Appalachian Regional must explicitly and clearly state Appalachian Regional's claim against CMS including the precise statutes, regulations, and directives that CMS allegedly violated in approving Kentucky's waiver application. In addition, the supplemental complaint should state precisely how CMS has violated those provisions. For example, if Appalachian Regional does indeed allege that CMS has violated its duty by permitting the Cabinet to measure network adequacy by faulty means, it should state that in its complaint and should also explain how those means are faulty.

The supplemental complaint must not incorporate by reference Appalachian Regional's second amended complaint. The Court will dismiss the second amended

complaint, which contains only Appalachian Regional's claim against CMS. Thus, the effective complaint in this action is the First Amended Complaint (DE 5). "An amended complaint supersedes an earlier complaint for all purposes." *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013). Accordingly, in its supplemental complaint, Appalachian Regional may incorporate by reference the allegations of the First Amended Complaint. The supplemental complaint should set forth Appalachian Regional's entire claim against CMS and only that claim. CMS may assert or reassert any appropriate arguments for dismissal in a motion to dismiss or other responsive pleading.

For all these reasons, the Court hereby ORDERS as follows:

1) Appalachian Regional's motion to file a supplemental complaint (DE 332) is GRANTED;

2) Appalachian Regional's Second Amended Complaint (DE 135) is DISMISSED;

3) CMS's motion for summary judgment (DE 329) is DENIED as moot;

4) Appalachian Regional's motion for summary judgment (DE 288) is DENIED as moot;

5) Appalachian Regional must file a supplemental complaint in compliance with this Opinion and Order within 21 days of the date of this Opinion and Order; and

6) CMS must file an answer or responsive pleading within 21 days of being served with a copy of the supplemental complaint with response and reply times to follow in accordance with the Local Rules.

Dated September 30, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY